### In re KOZOROFF et al.

### No. 42991.

District Court, E. D. New York.

Nov. 26, 1943.

Leo B. Mittelman, of New York City, for Robert M. Kozoroff.

Joseph Henry Cohen, of New York City, for Walter Wodiska.

J. L. Nicoll and George L. Madden, both of New York City, for trustee.

BYERS, District Judge.

Motion to set aside order of referee in turnover proceedings.

Motion for an order punishing Robert M. Kozoroff and Walter Wodiska for contempt for non-compliance with the said order.

These motions were heard together and will be disposed of in one memorandum.

The turnover order is based upon a decision by the referee containing findings concerning the affairs of the partnership K & S Wholesale Grocery Co., of which the individual bankrupts were members, having to do with an unexplained loss of merchandise and profits said to have arisen from the operations of business between January 1, 1942, and May 6, 1942.

As at December 31, 1941, the merchandise inventory was computed at a total of $38,911.86, and the referee so finds. He was required to do so under the testimony

after the bankrupt Kozoroff stated that the figure was true, while Wodiska professed no accurate knowledge on the subject.

Kozoroff says that the figures do not represent the cost price of the merchandise but included a write-up for alleged increase in value. Since the original records upon which the inventory was based had disappeared, the trustee was compelled to rely upon the figures prepared by the bankrupts and stated on their behalf to be true.

That finding is sustained by the evidence.

As to purchases of merchandise between January 1, 1942, and May 6, 1942, the referee finds that such were made in the total sum of $149,150.69, based upon entries contained in the purchase ledger, not supported, however, by invoices.

The finding is justified by the evidence and is sustained.

During the same period total sales were made in the sum of $165,998.66 as per the sales register.

That figure was based upon the records of the bankrupts and is sustained by the evidence.

The merchandise on hand at the close of the said period was sold at public auction for $5,277.32, and also the bankrupts were credited with a vague special sale in the sum of $300, making a total of sales of $171,575.98; this figure, subtracted from $188,062.55, the sum of the inventory at the start of the period, and the purchases made as stated, leaves a balance of $16,486.57 with which the referee charges the bankrupts, on the theory that they have failed to account for merchandise of that value, and according to the finding it is still in their possession or under their control.

In addition, he finds that the bankrupts realized from the sale of merchandise during the said period profits computed at the rate of 4%, amounting to $6,639.94, which sum is deemed to be in their possession or under their control, and accordingly he has made the turnover order which embraces these two last named items.

As to those findings, I am of the opinion that the evidence is insufficient.

The trustee made no attempt to establish the figures for the operation of the business by the partnership between January 1, 1942, and May 6, 1942.

It is true that the bankrupts testified that they paid their salesmen 45% of the difference between the cost of the merchandise and the selling price, leaving 55% for the partners; and it is likewise true that there is an inconsistency between the testimony at the first meeting of creditors and in the examination under 21–A, and that taken on the turnover proceeding concerning the margin of what is generally termed "gross profit". That testimony varied from 10% to 5%, and it was stated that in some instances the firm was satisfied with merely the 2% discount earned by paying cash for merchandise; the referee arrived at a fair average profit on sales of $165,998.66, of 4%, which is the basis for his finding against the bankrupts in the sum of $6,639.94.

It may be that the operations of the business would reflect a net profit of that sum, but the evidence does not support such an inference.

No attempt has been made on the part of the trustee to establish even an approximate cost of doing business on the part of these bankrupts. They certainly had to pay rent, office hire, probably delivery charges, and other expenses of maintaining their establishment, and all of those items would have to be reckoned before the firm's profits could be arrived at. Apparently these partners drew $50 a week, and the business would certainly have to pay reasonable salaries for the work that they did, before there would be anything left for distribution as profits; perhaps accountants differ as to whether partners are entitled to be paid a salary for actual services rendered, before their participation in the net earnings of the business can be established, but in any case the items first above mentioned constituted proper business expenses, which would have to be paid before profits would emerge.

These persons were legally in possession of all the merchandise that they purchased, and consequently there is no embarrassment on that score in connection with the turnover order; but before it can be decided that they still have that merchandise or its equivalent in their possession, the operations of the business in the financial sense must be laid bare, because it is possible that all of the merchandise for which

they are legally accountable was actually sold either to their customers or at the auction, and that the proceeds have in fact been applied in the legitimate operations of the business.

The elusive aspect of the case lies in the difficulty of treating a merchandise inventory plus purchases, in terms of dollars and cents. A recorded physical inventory, and accretions thereto, can be traced into money proceeds thereof with some degree of precision, in the presence of adequate records of both. But if merchandise, deemed to have been shown in possession, has actually been sold at less than cost, and the resultant loss is not plainly recorded so that it can be properly identified, the proceeds of sales stated in money may indicate an absence of merchandise on final accounting, while all that has indeed disappeared is part of the dollar value originally assigned to the merchandise.

To develop the true facts in such a situation as this, may place a heavy burden upon the trustee, but less than that would scarcely suffice to justify putting these bankrupts in the jeopardy arising from contempt proceedings.

The turnover order cannot be sustained in the present condition of the testimony. If the trustee desires an opportunity to offer further proof, the matter will be sent back to the referee for that purpose. If not, the turnover order will be set aside.

A disposition of the motion to punish the individual bankrupts for contempt for failing to comply with the turnover order will necessarily await the decision of the trustee as to his future conduct of this proceeding.

Settle order.